**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **SONY INTERACTIVE ENTERTAINMENT LLC,**<br><br>*Plaintiff,*<br><br>v.<br><br>**A11YU65Y94YQRN, *et al.*,**<br><br>*Defendants.* | **SEALED**<br><br>Civil Action No. |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND AN ORDER TO SHOW CAUSE**

Plaintiff Sony Interactive Entertainment LLC ("Plaintiff") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, expedited discovery, and an order to show cause (the "*Ex Parte* Motion").

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ..... 3

II. STATEMENT OF FACTS ..... 4

A. Plaintiff's Trademarks and Products ..... 4

B. Defendants' Unlawful Activities ..... 6

III. ARGUMENT ..... 7

A. Standard for Temporary Restraining Order ..... 8

B. Plaintiff Will Likely Succeed on the Merits ..... 8

C. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief ..... 11

D. The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction ..... 13

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ..... 14

A. An *Ex Parte* Temporary Restraining Order Without Notice is Appropriate and Necessary to Combat Unique Circumstances of Offshore Internet Infringement ..... 14

B. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Plaintiff's Trademarks Is Appropriate ..... 17

C. Preventing the Fraudulent Transfer of Assets Is Appropriate ..... 17

D. Plaintiff is Entitled to Expedited Discovery ..... 19

V. THIS COURT MAY ISSUE A TRO WITHOUT A BOND ..... 20

VI. CONCLUSION ..... 22

# MEMORANDUM OF LAW

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff is requesting temporary *ex parte* relief based on an action for trademark infringement, counterfeiting, and false designation of origin against the defendants identified in the Complaint (collectively, the "Defendants"). As alleged in Plaintiff's Complaint, Defendants are offering for sale and/or selling unauthorized and unlicensed products using counterfeit and infringing versions of Plaintiff's federally registered trademarks (the "Counterfeit Products") through at least the fully interactive, e-commerce stores operating under the seller aliases identified in the Complaint (the "Seller Aliases").

Defendants run a sophisticated counterfeiting operation and have targeted sales to residents in the United States by setting up and operating e-commerce stores using one or more Seller Aliases through which residents in the United States can purchase Counterfeit Products. Many of the e-commerce stores operating under the Seller Aliases share unique identifiers, indicating that their counterfeiting operations arise out of the same transaction, occurrence, or series of transactions or occurrences and establishing a logical relationship between them. However, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope of their operations. The e-commerce

platforms used by Defendants – including Amazon, eBay, AliExpress, Alibaba, Wish.com, Etsy, Walmart, DHgate, Temu, and TikTok – fail to adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to use false or inaccurate names and addresses when registering their e-commerce stores. Further, these e-commerce platforms continue to be unable or unwilling to prevent the rampant and flagrant listing of counterfeit products on their platforms. Thus, Plaintiff is forced to file this action to discover the full scope of the infringement and attempt to stop Defendants' counterfeiting of Plaintiff's registered and licensed trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products on U.S.-facing e-commerce platforms. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

## II. STATEMENT OF FACTS

### A. Plaintiff's Trademarks and Products

SIE, together with Sony Interactive Entertainment Inc. in Tokyo, Japan, and Sony Interactive Entertainment Europe in London, England (collectively the "SIE Affiliates"), is a global leader in video game and entertainment responsible for developing the internationally recognized PlayStation® brand and family of products and services (the "PlayStation® Brand"), which first launched in 1994. *See* Declaration of Jack Schecter (the "Schecter Decl.") at ¶ 4. SIE and the SIE Affiliates

manufacture, produce, market, advertise, offer for sale and sell a wide variety of products using the famous PLAYSTATION trademarks, including video games consoles, video games, peripheral accessories, and related consumer goods (collectively, "Genuine PlayStation® Products"). *Id*.

SIE and the SIE Affiliates are the owners of many famous and distinctive trademarks, including the PLAYSTATION trademark and other trademarks (collectively, the "PLAYSTATION Trademarks"), and work in conjunction to license and protect those trademarks. *Id.* at ¶ 7. SIE commercially exploits, protects and enforces rights in the famous and distinctive trademarks, names, logos, symbols, emblems, designs, trade dresses, and other identifying indicia associated with SIE and the SIE Affiliates, including, but not limited to, the PLAYSTATION Trademarks that are the subject of valid and subsisting trademark registrations on the Principal Register of the United States Patent and Trademark Office as well as those that SIE Affiliates have adopted and used in commerce throughout the United States. *Id*. The U.S. registrations for the PLAYSTATION Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* at ¶ 9. The registrations for the PLAYSTATION Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the PLAYSTATION Trademarks pursuant to 15 U.S.C. § 1057(b).

Genuine PlayStation® Products are distributed and sold to consumers through authorized retailers throughout the United States. *Id.* at ¶ 10. PlayStation® Products are among the most popular of their kind in the world. *See id.* at ¶ 5.

**B. Defendants' Unlawful Activities**

The success of the PlayStation® brand has resulted in significant counterfeiting of the PLAYSTATION Trademarks. *Id. at* ¶ 14. In recent years, Plaintiff has identified many fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, Walmart, Etsy, Temu, TikTok, and DHgate, including the e-commerce stores operating under the Seller Aliases, which were offering for sale and selling Counterfeit Products to consumers throughout the United States. *Id.* Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the e-commerce stores operating under the Seller Aliases and the Counterfeit Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants and that Defendants are interrelated. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the PLAYSTATION Trademarks. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65 (b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the PLAYSTATION Trademarks and preserve the status quo until a hearing can be held.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

Personal jurisdiction is proper over Defendants. Defendants have structured their business to target the United States market by accepting payment from and agreeing to ship Counterfeit Products to residents of the United States. On information and belief, Defendants have transacted business in the United States. *See* Complaint [1] at ¶¶ 2, 17, 19; *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355-58 (11th Cir. 2013); *see also NBA Properties, Inc. v. HANWJH*, 46 F.4th

614, 624-27 (7th Cir. 2022); *American Girl, LLC v. Zembrka*, 2024 U.S. App. LEXIS 23555, at *7-10 (2d Cir. Sept. 17, 2024).

**A. Standard for Temporary Restraining Order**

A court will issue a temporary restraining order where the requesting party demonstrates the following four factors: (1) it has a substantial likelihood of success on the merits; (2) the moving party will suffer irreparable injury if the order is not granted; (3) that the threatened injury to the plaintiff outweighs the harm the relief would inflict on the non-movant; and (4) entry of the order would serve the public interest. *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *Cathedral Art Metal Co. v. Divinity Boutique, LLC*, 2018 WL 566510 at *4 (N.D. Ga. 2018) (applying four-part test and granting preliminary injunction in a Lanham Act case).

**B. Plaintiff Will Likely Succeed on the Merits**

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). "In a trademark infringement action, the plaintiff must show, first, that its mark is valid and, second, that the defendant's use of the contested mark is likely to

cause confusion." *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322 (11th Cir. 1989).

In this case, the PLAYSTATION Trademarks are distinctive and are registered with the United States Patent and Trademark Office. Schecter Decl. at ¶¶ 7-9. The registrations for the PLAYSTATION Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* at ¶ 9. The registrations for the PLAYSTATION Trademarks constitute *prima facie* evidence of their validity and of the exclusive right to use the PLAYSTATION Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendants to use any of the PLAYSTATION Trademarks, and none of the Defendants are authorized retailers of PlayStation® Products. Schecter Decl. at ¶ 17. Thus, Plaintiff satisfies the first element of its Lanham Act claim.

"Where, as here, one produces counterfeit goods in an apparent attempt to capitalized upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Silver Star Micro, Inc.*, 2008 U.S. Dist. LEXIS 1526, at *20 (N.D. Ga. Jan. 9, 2008) (quoting *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir.1987)). Accordingly, the Court can presume a likelihood of confusion from Defendants' use of the PLAYSTATION Trademarks. The result is the same when considered in light of the Eleventh Circuit's seven enumerated factors to determine whether there is a

likelihood of confusion, which include: (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion. *Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000).

Plaintiff has submitted extensive documentation showing that Defendants are selling Counterfeit Products that look similar to genuine PlayStation® Products and use infringing and counterfeit marks identical to the PLAYSTATION Trademarks. Both Plaintiff and Defendants advertise and sell their products to consumers via the Internet, targeting consumers looking for genuine PlayStation® Products. Schecter Decl. at ¶¶ 13, 24. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine PlayStation® Products from Counterfeit Products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine PlayStation® Products to purchase Counterfeit Products instead. *Id.* In that regard, Defendants advertise Counterfeit Products using the PLAYSTATION Trademarks. *Id.* Evidence of actual consumer confusion is not required to prove that a likelihood

of confusion exists. *See E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1529 (11th Cir. 1985). Accordingly, Plaintiff is likely to establish a *prima facie* case of trademark infringement, counterfeiting, and false designation of origin.

### C. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Because Plaintiff has shown a likelihood of success on the merits, Plaintiff is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). Even without the presumption of irreparable harm, however, Plaintiff can easily satisfy this factor. Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. *Ferrellgas Partners, L.P. v. Barrow*, 143 Fed. Appx. 180, 190 (11th Cir. 2005). Evidence that a defendant sells a line of infringing products intending to capitalize on the plaintiff's goodwill constitutes "overwhelming evidence" that the plaintiff is likely to suffer irreparable harm. *Cathedra Art Metal Co. v. Divinity Boutique, LLC*, 2018 WL 2356181 at * 2 (N.D. Ga. 2018); *see also InternetShopsInc.com v. Six C Consulting, Inc.*, 2011 WL 1113445, at *6 (N.D. Ga. Mar. 24, 2011) (dilution of goodwill, loss of control of reputation, and loss of trade are sufficient to find irreparable injury). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Crossfit, Inc. v. Quinnie*, 232 F. Supp. 3d 1295, 1316 (N.D. Ga. 2017).

Defendants' unauthorized use of the PLAYSTATION Trademarks has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Schecter Decl. at ¶¶ 20-24. The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *Ferrellgas Partners, L.P.*, 143 F. App'x at 190; *see also Cathedra Art Metal Co. v. Divinity Boutique, LLC*, 2018 WL 2356181, at * 2 (N.D. Ga. 2018); *InternetShopsInc.com v. Six C Consulting, Inc.*, 2011 WL 1113445, at *6 (N.D. Ga. Mar. 24, 2011) (dilution of goodwill, loss of control of reputation, and loss of trade are sufficient to find irreparable injury). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Crossfit, Inc. v. Quinnie*, 232 F. Supp. 3d 1295, 1316 (N.D. Ga. 2017). Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Schecter Decl. at ¶ 25; *see also Mud Pie, LLC v. Deck the Halls, Y'all, LLC*, 2017 WL 8942387 at *3 (N.D. Ga. 2017).

Finally, Plaintiff is also likely to be irreparably harmed if an asset restraint is not entered. *See infra generally*. Since Defendants are individuals or businesses

who reside in China or other foreign jurisdictions with no U.S. presence, Plaintiff is likely to be irreparably deprived of its equitable profits remedy without an injunction. *See Kay v. Individual*, No. 22-cv-3033-RJD, 2023 U.S. Dist. LEXIS 117379, at *8-9 (S.D. Ill. Apr. 14, 2023).

### D. The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction

As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc*., 866 F. Supp. 585, 587–88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n.*, 929 F. Supp. 473, 478 (D.D.C. 1996).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Counterfeit Products. Thus, the balance of equities tips decisively in Plaintiff's favor. Moreover, "the public interest is served by preventing consumer confusion in the marketplace." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001). The public is currently under the false impression that Defendants

are operating their e-commerce stores with Plaintiff's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### A. An *Ex Parte* Temporary Restraining Order Without Notice is Appropriate and Necessary to Combat Unique Circumstances of Offshore Internet Infringement

The Court may grant an *ex parte* seizure order if providing notice to the Defendants would render fruitless the further prosecution of the action. *AT&T Broadband v. Tech Communications, Inc.*, 381 F.3d 1309, 1319 (11th Cir. 2004). An *ex parte* TRO is necessary and justified in this case given the unique circumstances of offshore e-commerce counterfeiting. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. "The weight of authority around the country appears to favor the granting of *ex parte* seizure orders in trademark counterfeiting cases, where fake versions of well-known brands are deliberately passed off to the public as the

genuine article." *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F. Supp. 248, 249-50 (S.D. Fla. 1982) (citing numerous cases). The justification for an *ex parte* order is even more compelling where a significant amount of evidence pertaining to the counterfeiting activity is in electronic form, and therefore subject to quick, easy, and untraceable destruction by the Defendants. *Dell Inc. v. BelgiumDomains, LLC*, 2007 WL 6862341 at *2 (S.D. Fla. 2007); *see also Chanel, Inc. v. Chanel255.ORG, et al.*, 2012 WL 12845630 at *5 (S.D. Fla. 2012).

Here, each Defendant is engaged in the inherently deceptive act of intellectual property infringement from outside the U.S. *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 132-33 (2d Cir. 2014) (confirming authority to issue TRO and preliminary injunction freezing assets of offshore defendants selling counterfeit goods online); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) (affirming TRO and preliminary injunction freezing assets of defendants selling counterfeit goods); *Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*, 737 F. Supp. 1521, 1527 (S.D. Cal. 1990) ("Due to the international aspect of the defendants' business, the Court is concerned that unless the assets are frozen, defendants may hide their allegedly ill-gotten funds."), *aff'd*, 970 F.2d at 561 (9th Cir. 1992); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987-88 (11th Cir. 1995) (internal quotations omitted) (affirming a preliminary injunction freezing assets of

U.S.-based defendants who arranged for making counterfeits in China). The Court should also consider actions taken by similarly situated defendants to evade court orders and/or move proceeds of infringing sales offshore. *See Cisco Sys. v. Shenzhen Usource Tech. Co.*, 2020 U.S. Dist. LEXIS 158008, at *10 (N.D. Cal. Aug. 10, 2020); *In re Vuitton Et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979).

Plaintiff has submitted evidence showing that Defendants are selling Counterfeit Products and operate from China or other foreign jurisdictions. *See* Schecter Decl. at ¶ 15. Defendants "take advantage of a set of circumstances – the anonymity and mass reach afforded by the internet and the cover afforded by international borders – to violate [Plaintiff's] trademarks with impunity." *Bose Corp. v. P'ships, et al.*, 334 F.R.D. 511, 516 (N.D. Ill. 2020). Specifically, Plaintiff has established that Defendants operate offshore in China or other foreign jurisdictions. Schecter Decl. at ¶ 15. Plaintiff has concurrently filed a declaration evidencing that infringers like Defendants set up new e-commerce stores, and transfer proceeds of infringing sales to bank accounts outside the United States once they have received notice of a lawsuit. Declaration of Justin R. Gaudio ("Gaudio Decl.") at ¶¶ 5-10. Defendants are likely aware that it would be "difficult if not impossible to enforce U.S. judgments in China." *Cisco Sys.*, 2020 U.S. Dist. LEXIS 158008 at *25; Gaudio Decl. at ¶¶ 11-12.

### B. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Plaintiff's Trademarks Is Appropriate

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all use of the PLAYSTATION Trademarks, or substantially similar marks, on or in connection with all e-commerce stores operating under the Seller Aliases. Courts have regularly authorized injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g.*, *CCA & B, LLC v. anpingxianaotesenshangmaoyouxiangongsi*, *et al*., No. 1:23-CV-4848-TWT, 2023 WL 11957219 (N.D. Ga. Nov. 7, 2023).

### C. Preventing the Fraudulent Transfer of Assets Is Appropriate

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Counterfeit Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. Defendants can easily remove all evidence of their counterfeit goods from their virtual storefronts and transfer any ill-gotten funds into foreign bank accounts, where they are beyond this Court's reach. *See F.T.C. v. Atlantex Assoc.*, 872 F.2d 966, 968 (11th Cir. 1989) (affirming *ex parte* TRO and asset freeze order against party accused of deceptive trade practices to preserve funds for possible restitution). If an asset restraint is not granted, Defendants will likely disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before

a restraint is ordered. On information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Orders freezing Defendants' assets are warranted to assure the availability of permanent relief. *Levi Strauss & Co.*, 51 F.3d at 987. Such asset freezes are particularly appropriate against sellers of counterfeit goods who are likely to hide their ill-gotten profits if their assets are not seized. *Reebok Intern., Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). A court can issue an asset freeze when its equitable authority is invoked. "[T]he Court unquestionably has authority to freeze assets to preserve an equitable accounting of profits, a remedy provided to counterfeiting victims by 15 U.S.C. § 1117(a)." *Johnson & Johnson v. Advanced Inventory Mgmt.*, 2020 U.S. Dist. LEXIS 248831, at *8 (N.D. Ill. July 20, 2020) (internal citations omitted); *see also Animale Grp. Inc.*, 256 F. App'x at 709 (collecting cases); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) (upholding asset restraint to preserve profits remedy). Plaintiff seeks a permanent injunction, an accounting of Defendants' profits pursuant to the Lanham Act, and an award of its attorney's fees. Plaintiff has thereby invoked this Court's equitable authority. *Levi Strauss*, 51 F.3d at 987; *Wheeless v. Gelzer*, 765 F. Supp. 741, 743 (N.D. Ga. 1991) (holding that request for attorneys' fees and monetary awards that are restitutionary in nature are equitable.).

Plaintiff has also shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to 15 U.S.C. § 1117(a)(1), Plaintiff is entitled, "subject to the principles of equity, to recover . . . defendant's profits." Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. An equitable accounting of profits under the Lanham Act furthers the congressional purpose by making infringement unprofitable and is justified because it deprives defendants of unjust enrichment and provides a deterrent to similar activities in the future. *Burger King Corp. v. Mason*, 855 F.2d 779, 781 (11th Cir. 1988). The Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze.

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

### D. Plaintiff is Entitled to Expedited Discovery

"[F]ederal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.*

Furthermore, courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Plaintiff requests expedited discovery to identify names and financial accounts Defendants use for their operations. The expedited discovery requested is limited to what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., CCA & B, LLC*, 2023 WL 11957219. Plaintiff's asset restraint may have little meaningful effect without corresponding expedited discovery.

## V. THIS COURT MAY ISSUE A TRO WITHOUT A BOND

Federal Rule of Civil Procedure 65(c) requires that an applicant for a TRO or preliminary injunction provide security against the potential effects of a wrongfully-issued injunction. Fed. R. Civ. P. 65(c). However, it is well-established in this Circuit that the amount of security required by the rule is a matter within the discretion of the trial court, and the court may elect to require no security at all. *BellSouth Telecom., Inc. v. MCIMetro Access Transmission Services, LLC*, 425 F.3d 964, 970 (11th Cir. 2005); *see also e.g. Georgia Coal. for People's Agenda, Inc. v. Kemp*, 347 F. Supp.3d 1251, 1269 (N.D. Ga. 2018) (waiving bond requirement and citing *BellSouth*); *AFC Enterprises, Inc. v. Rest. Grp. LLC*, 1:10-CV-1772-TWT, 2010 WL 4537812, at *5 (N.D. Ga. Nov. 3, 2010) (rejecting defendant's argument that

preliminary injunction was improperly granted because no bond was required); *DJR Associates, LLC v. Hammonds*, 241 F. Supp.3d 1208, 1234 (N.D. Ala. 2017) ("The Eleventh Circuit . . . has said at least twice (although once in an unpublished opinion) that whether to set a bond as a condition to the issuance of a preliminary injunction and in what amount are within the discretion of the trial court."). Courts have held that security is not required when the moving party has a high probability of succeeding on its claim. *University Books and Videos, Inc. v. Metropolitan Dade County*, 33 F. Supp.2d 1364, 1374 (S.D. Fla. 1999). Finally, the burden is on the defendant to request a bond and submit evidence regarding the appropriate amount. *Mud Pie, LLC v. Deck the Halls, Y'all, LLC*, Case No. 17-CV-2789, 2017 WL 8942387 (N.D. Ga. Sep. 27, 2017) (ordering defendants to provide reasonable estimate of potential lost sales, with supporting documentation, within one week of order).

Plaintiff has demonstrated that it has a substantial likelihood of succeeding on the merits of its claims. Therefore, this Court may waive the requirement for Plaintiff to post security. Alternatively, Plaintiff requests that the Court order Defendants to appear and provide an estimate of their potential lost sales, with supporting documentation, at the hearing on Plaintiff's motion for an order to show cause why a preliminary injunction should not issue.

## VI. CONCLUSION

In view of the foregoing and consistent with previous similar cases, Plaintiff requests that the Court enter a Temporary Restraining Order in the form submitted herewith.

Dated, this 27th day of January, 2025.

Respectfully submitted,

*/s/ Carrie A. Hanlon*

Amy C. Ziegler
Ga. Bar No. 676426
E-mail: aziegler@gbc.law
Justin R. Gaudio
Ga. Bar No. 434363
E-Mail: jgaudio@gbc.law

200 West Madison Street, Suite 2100
Chicago, Illinois 60606
Telephone: 312-360-0080
Facsimile: 312-360-9315
GREER, BURNS & CRAIN, LTD.

Carrie A. Hanlon
Ga. Bar No. 289725
E-mail: carrie@sladlaw.com
Jason H. Cooper
Ga. Bar No. 778884
E-mail: jason@sladlaw.com

1397 Carroll Drive
Atlanta, GA 30318
Telephone: (404) 252-0900
Facsimile: (404) 252-0970
THE SLADKUS LAW GROUP

***Attorneys for Plaintiff***

**CERTIFICATE OF FONT & SIZE SELECTION**

Pursuant to LR 7. 1(D), I certify that this paper was prepared with one of the font and point selections approved by the Court in LR 5.1(B).

*s/Carrie A. Hanlon*
Carrie A. Hanlon